UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MICHAEL GEORGE YOUNG, JR.,

    Plaintiff,

v.                                         Case No: 2:16-cv-44-FtM-38MRM

MIKE SCOTT, THOMAS
EBERHART, JAMES BARACCO,
KEVIN KOLLER and MIA
RODGERS,

    Defendants.
_____/

**OPINION AND ORDER**[1]

**I.**

Plaintiff Michael George Young, Jr., initiated this 42 U.S.C. § 1983 action proceeding *pro se* as a pre-trial detainee at the Lee County Jail. Plaintiff is proceeding on his Amended Complaint (Doc. #56) filed October 26, 2016, against the following defendants from the Lee County Sheriff's Office: Sheriff Mike Scott, Colonel Thomas Eberhard, Major James Baracco, Captain Kevin Koller, and Captain Mia Rodgers in their official and individual capacities. Doc. #56 at 3-4.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Under the "Statement of Claim" portion on the Amended Complaint, Plaintiff summarizes his claims against Defendants as follows:

> In violating Mr. Young's First Amendment rights, Sheriff Mike Scott's policies, rules, and procedures of visitation violate Mr. Young's liberty interest to intimate association with his daughter. They violated Florida State law and Florida Model Jail standards of allowing all persons held within [its] state prisons and county jail systems visitation with their spouses, children, relatives, and friends. This also a violation of due process of law and equal protection rights of the 5th and 14th Amendments.
>
> In violating Mr. Young's [Eighth] Amendment right, Sheriff Mike Scott and his officers in charge of the corrections and the care and well-being of Mr. Young and denying him visitation without regard to his mental and emotional stat[u]s. This is further compounded by the fact, as show in in Exhibit "I" that the current system has capabilities of being upgraded with software and hardware at a [minimal] cost. The "Deliberate Indifference" being shown to Mr. Young constitutes cruel and unusual punishment. Mr. Young is also subjected needlessly to the mental and emotional stresses of long term separation from family and friends without hope of ever seeing his daughter again, unless she can scrape up enough money to come all the way to Fort Myers, Florida.
>
> In violation of Mr. Young's [Fifth] and [Fourteenth] Amendment rights, Sheriff Mike Scott and the other defendants in charge of Mr. Young's care and well-being violated his Substantive Due Process rights in not allowing some form of hearing or other mediation method to find a solution for the denial of visitation with his daughter. He has suffered cruel and unusual punishment from the long term denial to see Ms. Young and is suffering from mental and emotional anguish, tensions, and stresses unjustly placed upon him. He suffers from daily depressive episodes and mental hardships needlessly due to this denial. His Equal Protection rights are violated in the denial of allowing him the same rights, privileges, and immunities that others enjoy during their detainments. His liberty interest is violated in the denial of his intimate association with Ms. Young.

Doc. #56 at 5-7. As relief Plaintiff seeks declaratory relief, injunctive relief, and monetary damages. Id. at 14.

Defendants' move for summary judgment in an Amended Motion for Summary Judgment (Doc. #58) filed on November 2, 2016. Defendants refer to the following exhibits in support of their motion: Affidavit of Colonel Thomas Eberhardt (Doc. 58-1, Aff. Eberhardt), Affidavit of Deputy First Class Bryon Haycook (Doc. #58-2, Aff. Haycook), and a copy of the final criminal judgment entered against Plaintiff in the Twentieth Judicial Circuit Court (Doc. #58-3).[2]

Defendants argue that none of Plaintiff's allegations rise to the level of a Constitutional violation. Doc. #58 at 7. Regarding the visitation claim, Defendants recognize that pre-trial detainees have a Constitutional right to reasonable visitation. Id. at 8 (citing Jones v. Diamond, 594 F.2d 997, 1013 (5th Cir 1979)). However, Defendants argue that visitation may be limited when necessary to preserve institutional security. Id. Defendants argue that the Lee County Sheriff's policy prohibiting Skype-style visitation was implemented to preserve institutional security. Id. at 9.

In support of the security argument, Defendants opine that if inmates were permitted Skype visitation they could "pass messages, plan escapes, or conduct gang related, or other criminal activity" because the correctional officials would lose the ability to control and supervise the visitors visiting each inmate. Id. at 4 (Exh. A ¶ 8). Defendants further state that Skype visitation would have a negative effect on security "as the secure network could be compromised due to open connections outside the firewalls." Id. at 4 (citing Exh. A ¶ 9). Defendants submit that the current video visitation

---

[2] Although Colonel Eberhardt's affidavit refers to Lee County Corrections Bureau SOP 5.03 as an attachment to his affidavit, see Doc. #58-1 at 2, the Standard Operating Procedures are not attached to his affidavit, nor do the SOP appear elsewhere in the record.

system is not compatible with Skype and the cost associated with adding even one Skype portal would be $25,580.00.  Id. at 5, 10; see also Aff. Haycook, Doc. #58-2 at 2. Defendants explain that the current visitation procedures allow standard video visitation and allow the Lee County Sheriff's Office to control the number of visitors, the identity of the visitors, the items a visitor can bring with them to visitation, and the behavior of the visitors.  Id.

Defendants Eberhardt, Baracco, and Koller further argue that the Amended Complaint does not allege they were personally involved in the alleged Constitutional deprivations.  Id.  In fact, Defendants point out that their names are not even mentioned in the Amended Complaint.  Id.  Because there is no affirmative causal connection between the Defendants and the alleged Constitutional deprivations, they move for summary judgment.  Id.

Despite Plaintiff being allotted additional time to respond to the Defendants' amended motion in response to Plaintiff's Amended Complaint, Plaintiff did not file an amended response and the time to do so has long expired.  See Doc. #61.  Considering Plaintiff is proceeding *pro se*, the Court will consider Plaintiff's previous response (Doc. #39) opposing Defendants' initial motion for summary judgment because both motions are substantially the same.  Attached to Plaintiff's response is a document entitled "Psychiatric opinions on visitation" (Doc. #39-1).

In response to Defendants' allegations that the Complaint contains no allegations of personal involvement, Plaintiff argues that all Defendants established the jail's policies and procedures board.  Doc. #39 at 13.  Plaintiff recognizes that Defendant Baracco's name is not mentioned in the Complaint, but states he identified Baracco as a defendant

due to his position in the chain-of-command and his long career with the Lee County Corrections Bureau. Id. Plaintiff contends Defendants violated his First Amendment rights because of the jail's policy prohibiting Skype visitation is arbitrary and capricious. Id. at 3.

In support of Plaintiff's Due Process and Equal Protection claims, he argues that Florida law, specifically Florida's Model Jail Standards, have created a liberty interest to two-hours a week of visitation. Id. at 4. Plaintiff further contends that the current video system is compatible with a software program called Viszo, which is used by the Public Defender's Office to communicate with their clients at the jail. Id. at 6.

In support of Plaintiff's Eighth, or Fourteenth Amendment, claim of cruel and unusual punishment, he contends he faced cruel and unusual punishment by having a long-term denial of visitation with his family and friends who could not travel to Fort Myers to participate in the video visitation at the Ortiz facility. Id. at 10. This matter is ripe for review.

## II.

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted). See also, Fed. R. Civ. P. 56(c)(2). "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." Moton, 631 F.3d at 1341 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The standard for creating a genuine dispute of fact requires the court

to "make all *reasonable* inferences in favor of the party opposing summary judgment," Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc)(emphasis added), not to make all *possible* inferences in the non-moving party's favor. To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." Beard v. Banks, 548 U.S. 521, 529 (2006)(citations omitted); Celotex, 477 U.S. at 322; Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. Beard, 548 U.S. at 529 (citations omitted); Shotz v. City of Plantation, Fl., 344 F.3d 1161, 1164 (11th Cir. 2003). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

**III.**

The parties do not dispute most of the facts that are necessary to resolve this case. See Doc. #58 at 3, fn. 1. Plaintiff was a pre-trial detainee at the Lee County Jail during the incidents giving rise to the cause of action. Id. at 5. Plaintiff's daughter was serving in the United States Army and was stationed at Fort Bliss, Texas during Plaintiff's pre-trial detention at the jail. Id. at 8. In the spring and summer of 2014, Plaintiff filed his first inmate grievances and requests to access Skype-style videoconference visitation, so he could visit with his daughter. Id. Plaintiff's inmate grievances and requests were denied. Id. Plaintiff again filed inmate grievances and requests to access Skype video visitation with his daughter in July 2015. Id. at 9. Defendant Rogers denied Plaintiff's inmate requests and grievances. Id. (citing Pl's Exh. B). Plaintiff's grievance filing continued in November and December 2015, see Pl's Exh. C, Exh. E, to which Plaintiff either received no reply, or jail officials denied his request explaining that the jail only has video visitation, not Skype. The video visitation in place at the Lee County Jail requires visitors to go to the core facility located off site. Id. at 10 (citing P's Exh. E).

The Defendants submit that the Lee County Jail's standard operating procedures, which apply equally to pre-trial detainees and inmates at the county jail, do not allow any inmate to have Skype-style videoconference visitation. Doc. #58-1, Aff. Eberhardt at 1-2. Defendants state that the restriction is necessary to maintain security. Id. at 2. Defendants opine that allowing Skype would pose security risks at the jail including, but not limited to, not knowing whether visitors were engaging in behavior that could potentially negatively affect the security of the jail, such as, passing of messages, planning escapes, and conducting gang or other criminal activity. Id.

Plaintiff disputes Defendants' security concerns and argues that the chances "of passing contraband, harm to visitors, or passing a weapon are non-existent." To the contrary, Plaintiff asserts security is the purpose of this type of visitation. "Institutional security is very well preserved by this type of non-contact visitation." Doc. #39 at 8. Aside from Plaintiff's lone allegations, he presents no evidence to dispute Defendants' affidavits.

### A. Eighth and Fourteenth Amendment Claims

The United States Supreme Court has observed:

> Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the Legislative and Executive branches of Government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint. Where a state penal system is involved, federal courts have . . . additional reason to accord deference to the appropriate prison authorities.

Turner v. Safley, 482 U.S 78, 84-85 (1987) (citation omitted). Thus, this Court is cognizant of the deference owed to prison authorities' decisions in maintaining a safe and orderly facility. Despite this deference, courts facing challenges to jail policies that denied pre-trial detainees contact visits with family have on occasion deemed such blanket denials unconstitutional. See Miller v. Carson, 563 F.2d 741, 747 (5th Cir. 1977) ("'There can be no doubt that the necessity of assuring security must be balanced against the right to humane treatment of prisoners and that if contact visits (visits that permit inmates to touch their visitors) are incompatible with that need they must be scarified. The critical question is whether the two can coexist. We are persuaded they can . . .' So said the Court in Rhem v. Malcolm, 371 F.Supp at 605. So said the trial judge in this

case. So say we.'"); Marcera v. Chinlund, 595 F.2d 1231 (2d Cir. 1979) (all pretrial detainees except those classified as a security risk are entitled to contact visits); Detainees of the Brooklyn House of Detention for Men v. Malcolm, 421 F. Supp. 832, (E.D. NY Oct. 8, 1976) (finding no contact visitation for pretrial detainees violated Due Process and Equal Protection Clauses); Doe v. Sparks, 733 F. Supp. 227, 234 (W.D. PA Aug. 20, 1990) (finding no contact visitation policy violated Equal Protection Clause of the Fourteenth Amendment); contra, Feeley v. Sampson, 570 F.2d 364, 373 (1st Cir. 1978) (finding pretrial detainees do not have right to a contact visit). Contact visitation is not at issue in this case, however.

Here, the issue presented is whether the record presents a question of material fact that Defendants violated Plaintiff's rights protected under the United States Constitution by not providing Skype visitation, so Plaintiff could visit with his daughter who resided out of state. As a result of a Lee County Jail policy restricting Skye visitation, Plaintiff had no opportunities for visitation during his pre-trial detention because his family did not reside in Florida.

The applicable standard for reviewing pre-trial detainees' challenges to the constitutionality of conditions or restrictions that implicate a deprivation of liberty without due process of law is set forth in Bell v. Wolfish, 441 U.S. 520 (1979). Id. at 535. The proper inquiry is whether the conditions amount to punishment of the detainee because a pretrial detainee may not be punished prior to an adjudication of guilt under the Due Process Clause. Id. at 535-536. Notably not every disability imposed during pretrial detention amounts to punishment. Id. at 538. To determine whether a condition amounts to punishment, the courts consider:

> [W]hether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. . . . Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on 'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it].' . . . Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'

Id. at 538-539.

Here, the undisputed record evidence shows that Skype was not permitted at the Lee County Jail for any inmate or pretrial detainee.[3] The record shows no expressed intent to punish by not allowing Skype visitation to Plaintiff. Instead, Defendants present affidavits from correctional officials who submit that Skype visitation would be detrimental to security at the county jail. Defendants further present evidence that the current video visitation system would not function with Skype visitation. A salient difference between the current video visitations in place as opposed to Skype visitation is the correctional officials' ability to see what is happening on the other side of the camera at the main facility. To the contrary, Skype visitation would essentially allow visitors on the non-detained side unfettered communication with the detained individual. Considering the absence of evidence that Defendants had an expressed intent to punish and in light of the legitimate governmental objective to keeping the facility secure, the record contains no genuine dispute of material fact concerning Plaintiff's due process, or conditions of

---

[3] Because the visitation policy is the same for all individuals detained at the jail, no Equal Protection claim exists.

confinement claim. Defendants are entitled to summary judgment on Plaintiff's Fourteenth and Eighth Amendment claims.

## B. First Amendment

Plaintiff also challenges the Lee County Jail's policy prohibiting Skype visitation under the First Amendment. Although Defendants submit that "the constitutionality of limitations imposed on visitation for pretrial detainees involves an analysis under the Fourteenth Amendment, rather than the Fifth or First," this Court's independent review revealed no prohibition to the First or Fifth Amendments applying to the county jail's visitation policy. One case Defendants cite in support of the proposition that the Fifth or First Amendment analysis does not apply in this case, Miller v. Carson, 563 F.2d 741, 746 (5th Cir. 1977), in fact stated that "because the appellants to do not attack the trial judge's conclusions of law, we need not determine which constitutional amendment is applicable to what misconduct by the prison authorities." Courts have reviewed visitation policies affecting convicted prisoners for compliance with free speech under the First Amendment and the Equal Protection Clause under the Fifth and Fourteenth Amendments. The United States Supreme Court has held:

> [C]onvicted prisoners do not forget all constitutional protections by reason of their conviction and confinement in prison. 'There is no iron curtain drawn between the Constitution and the prisons of this country. So, for example, case have held that sentenced prisoners enjoy freedom of speech and religion under the First and Fourteenth Amendments; that they are protected against invidious discrimination on the basis of race under the Equal Protection Clause of the Fourteenth Amendment; and that they may claim the protection of the Due Process Clause to prevent additional deprivation of life, liberty, or property without due process of law. **A fortiori, pretrial detainees, who have not been convicted of any crimes, retain at least those**

> **constitutional rights that we have held are enjoyed by convicted prisoners.**

Bell v. Wolfish, 41 U.S. 520, 545 (1979) (emphasis added) (internal citations omitted). See also Doe v. Sparks, 733 F.Supp. 227 (W.D. PA March 14, 1990) (addressing Fifth and Fourteenth Amendment Equal Protection claim and to anti-homosexual visitation policy affecting a convicted prisoner); McMillian v. Carlson, 369 F. Supp. 1182, 1188 (D. Mass. Dec. 31, 1973) (finding First Amendment free speech violation stemming from Federal Bureau of Prison's visitation policy precluding a reporter from personally interviewing a federal inmate) .

In Turner v. Safley, the Supreme Court articulated the following four considerations as guidelines in determining whether a prison policy was valid: (1) "there must be a 'valid rational connection' between the prison regulation and the legitimate governmental interest put forth to justify it"; (2) "whether there are alternate means of exercising the right that remain open to prison inmates"; (3) the impact of accommodating the asserted constitutional right on guards and other inmates; and, (4) the absence of ready alternatives is evidence of the reasonableness of a prison regulation.  482 U.S. at 89-91.

At issue in this case is the Lee County Jail's visitation policy, which prohibited Skype visitation.  Aff. Eberhardt, [Doc. #58-1 at 2](Doc. #58-1 at 2).  Here, the undisputed evidence reveals that the Lee County Jail has a no-Skype visitation policy due to numerous security concerns including, but not limited to, the inability to determine whether the non-detained Skype visitor is engaged in behavior that could potentially negative affect security at the jail including passing of messages, planning escapes, gang, or other criminal activity, and comprising the secure internet network due to an open connection outside firewalls.  Id. The impact of accommodating Skype access is a great cost not only to security, but costly

as it is arguably precluded by the current technological systems in place at the jail. Aff. Haycock, Doc. #58-2 at 1-2. Further, there are alternative means of visitation at the jail. Sadly for Plaintiff, his daughter did not reside in Florida. The only way Plaintiff could have visited with his daughter, who resided out of state, was through the internet. At this point in time, advancements in technology do not help Plaintiff's cause given the security risks to the jail. Accordingly, Defendants are entitled to summary judgment on Plaintiff's First Amendment claim.

### C. Certain damages requests are moot or barred

Because the Court determines the record presents no genuine dispute of material fact on Plaintiff's challenge to the Lee County Jail's no-Skype visitation policy under the First, Fifth, Eighth, and Fourteenth Amendments, the Court will not address Defendants' remaining valid arguments that Plaintiff's request for injunctive relief is moot based on his subsequent conviction, transfer from the county jail, and detention within the Florida Department of Corrections, or that his punitive damages request against the Lee County Sheriff in his official capacity is barred.

ACCORDINGLY, it is hereby

**ORDERED:**

1. Defendants' amended motion for summary judgment (Doc. #58) is **GRANTED** for the reasons set forth herein.

2. The Clerk of Court shall terminate all pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 24th day of August, 2017.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

FTMP-1
Copies: All Parties of Record